BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
 (CA 203111; AZ 020191)
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 798-5860
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

Co-Lead Class Counsel

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | Case No.: 3:09-MD-02087-BTM(KSC) |
| ANDREW DREMAK, on Behalf of Himself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>vs.<br><br>IOVATE HEALTH SCIENCES GROUP, INC., *et al.*,<br><br>Defendants. | Case No.: 3:09-CV-01088-BTM(KSC)<br><br>PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Date: April 23, 2013<br>Time: 3:00 p.m.<br>Dept.: 15B, 15th Floor - Annex<br>Judge: Hon. Barry Ted Moskowitz |

00058282

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................................................ 1

II. THE OBJECTION SHOULD BE OVERRULED BECAUSE IT WAS FILED FOR IMPROPER PURPOSES ........................................... 1

III. THE OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED ...................................................................................................... 4

    A. The Lack of Objections Indicates the Settlement's Fairness ................................................................................................. 4

    B. The McBean Objection Is Defective ................................................ 4

    C. The Objectors Do Not Meet Their Burden ...................................... 5

        1. The Requirements for Objecting Are Fair ............................. 5

        2. The Claims Deadline is Appropriate ..................................... 6

        3. The Claims Process is Fair, Reasonable, and Adequate ................................................................................ 7

        4. The *Cy Pres* Distribution is Fair and Reasonable .................. 8

        5. The "Confidentiality Provision" Does Not Violate Rule 23 or Due Process ........................................................ 10

        6. Notice Was the Best Practicable ........................................... 11

    D. The Remaining Boilerplate Objections Should Be Overruled ......................................................................................... 12

        1. Rule 23 Requirements ........................................................... 12

        2. Attorneys' Fees and Expenses .............................................. 12

        3. The Catch-all Objection Should Be Overruled .................... 13

IV. CONCLUSION ................................................................................................. 13

BLOOD HURST & O'REARDON, LLP

0058282

i

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Barnes v. FleetBoston Fin. Corp.*,
  No. 01-10395, 2006 U.S. Dist. LEXIS 71072
  (D. Mass. Aug. 22, 2006) .................................................................................. 2

*Carlough v. Amchem Prods., Inc.*,
  158 F.R.D. 314 (E.D. Pa. 1993) ........................................................................ 11

*Dennis v. Kellogg*,
  697 F.3d 858 (9th Cir. 2012) ................................................................... 8, 9, 10

*Devlin v. Scardelletti*,
  536 U.S. 1 (2001) ............................................................................................... 2

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  183 F.3d 1 (1st Cir. 1999) .................................................................................. 2

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................... 4

*Heekin v. Anthem, Inc.*,
  No. 05-cv-01908, 2013 U.S. Dist. LEXIS 26700
  (S.D. Ind. Feb. 27, 2013) ................................................................................... 3

*In re Baby Prods. Antitrust Litig.*,
  708 F.3d 163 (3d Cir. 2013) .......................................................................... 7, 8

*In re Bluetooth Headset Prod. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..................................................................... 12, 13

*In re Groupon, Inc.*,
  No. 11md2238, 2012 U.S. Dist. LEXIS 185750
  (S.D. Cal. Sept. 28, 2012) ................................................................................ 10

*In re High Sulfer Content Gasoline Prods. Liab. Litig.*,
  517 F.3d 220 (5th Cir. 2008) ........................................................................... 13

*In re Initial Pub. Offering Sec. Litig.*,
  No. 21 MC 92, 2011 U.S. Dist. LEXIS 103698
  (S.D.N.Y. Aug. 25, 2011) .................................................................................. 6

BLOOD HURST & O'REARDON, LLP

0058282

ii

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

<mark>
<mark>
<mark>
<mark>
<mark>
<mark>
<mark>

*In re Law Office of Jonathan E. Fortman, LLC*,
   No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903
   (E.D. Mo. Feb. 1, 2013) .................................................................................. 2

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379, 2013 U.S. Dist. LEXIS 37286
   (N.D. Cal. 2013) ...................................................................................... 5, 12

*In re Oil Spill*,
   No. MDL 2179, 2013 U.S. Dist. LEXIS 4595
   (E.D. La. Jan. 11, 2013) ............................................................................... 3

*In re TD Ameritrade Account Holder Litig.*,
   No. 07-2852, 2011 U.S. Dist. LEXIS 103222
   (N.D. Cal. Sept. 13, 2011) .......................................................................... 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M07-1827, 2013 U.S. Dist. LEXIS 34845
   (N.D. Cal. Mar. 12, 2013) ............................................................................ 3

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
   No. 8:10-ML2151, 2012 U.S. Dist. LEXIS 183942
   (C.D. Cal. Dec. 28, 2012) ............................................................................ 5

*In re UnitedHealth Group PSLRA Litig.*,
   643 F. Supp. 2d 1107 (D. Minn. 2009) ........................................................ 2

*In re Uponor, Inc.*,
   No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140
   (D. Minn. Sept. 11, 2012) ............................................................................ 3

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2013) .................................................................... 7, 9

*Malta v. Fed. Home Loan Mortg. Corp.*,
   No. 10-CV-1290, 2013 U.S. Dist. LEXIS 15731
   (S.D. Cal. Feb. 5, 2013) ............................................................................... 5

*Mandujano v. Basic Vegetable Prods. Inc.*,
   541 F.2d 832 (9th Cir. 1976) ....................................................................... 4

*McPhail v. First Command Financial Planning, Inc.*,
   No. 05cv179, 2009 U.S. Dist. LEXIS 26544
   (S.D. Cal. Mar. 30, 2009) ............................................................................ 4

BLOOD HURST & O'REARDON, LLP

00058282

iii

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Moore v. Verizon Communs., Inc.*,
   No. 09-1823, 2013 U.S. Dist. LEXIS 15609
   (N.D. Cal. Feb. 5, 2013) ........................................................................................ 6

*Nachshin v. AOL, LLC*,
   663 F.3d 1034 (9th Cir. 2011) .............................................................................. 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 4

*Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*,
   No. 10cv1777, 2012 U.S. Dist. LEXIS 125415
   (S.D. Cal. Sept. 4, 2012) ....................................................................................... 5

*Shames v. Hertz Corp.*,
   No. 07-CV-2174, 2012 U.S. Dist. LEXIS 158577
   (S.D. Cal. Nov. 5, 2012) ........................................................................................ 4

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) .............................................................................. 7

**RULES**

Fed. R. Civ. Proc. 23 ............................................................................... 10, 11, 12

**OTHER AUTHORITIES**

Federal Judicial Center, *Managing Class Action Litigation: A Pocket
   Guide for Judges*, (3d ed. 2010) ..................................................................... 2, 11

*Manual for Complex Litigation*, Fourth, §21.643 .............................................. 1, 2

BLOOD HURST & O'REARDON, LLP

00058282

iv

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION

As set forth in Plaintiff's Motion for Final Approval of Class Action Settlement ("Opening Brief") (Doc. 1637-1), the Settlement readily meets the "fair, reasonable, and adequate" standard and has been well received by the Class. In total, Plaintiff has received jointly-submitted objections from only *two* possible Class members, Sasha McBean ("McBean") and Tim Blanchard ("Blanchard") (together "the Objectors"). However, these are not well-intentioned members of the Class, but rather stand-ins for well-known "serial" objector Darrell Palmer.

Professional objectors, like Palmer (and his clients), pose a significant obstacle to the approval and implementation of class action settlements. As the *Manual for Complex Litigation (Fourth)*, §21.643 explains, "[o]bjections may be motived by self-interest rather than a desire to win significant improvements in the class settlement." Accordingly, the Court must "distinguish between the meritorious objections and those advanced for improper purposes." *Id.*

Palmer makes a living objecting to settlements, not to make them better, but to extort attorneys' fees by holding up the settlement on appeal. McBean and Blanchard are themselves not new to the game, and have previously allowed Palmer to submit form and unmeritorious objections to class settlements on their behalf not to benefit the class, but to receive a payout for themselves.

These objections are submitted for improper purposes, have no merit, and should be overruled.

## II. THE OBJECTION SHOULD BE OVERRULED BECAUSE IT WAS FILED FOR IMPROPER PURPOSES

Legitimate objectors play a valuable role in ensuring that a settlement is fair, reasonable, and adequate. However, the Federal Judicial Center and countless state and federal courts have written about serial objectors, including Palmer, and warn courts to "[w]atch out … for canned objections from

0058282

1

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Barbara J. Rothstein, *et al.*, Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 17 (3d ed. 2010); *id.* at 36 (cautioning courts to "be wary of self-interested professional objectors who often present rote objections to class counsel's fee requests and add little or nothing to the fee proceedings."); *see also In re UnitedHealth Group PSLRA Litig.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) (referring to a group of serial objectors as "remoras" who were "loose again"); *Devlin v. Scardelletti*, 536 U.S. 1, 23 n.5 (2001) (Scalia, J., dissenting) (observing that serial objectors' penchant for filing "canned" briefs and baseless objections often leads to baseless appeals in the quest for a fee); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 6-7 (1st Cir. 1999) ("[W]e recognize that a class member and his or her attorney conceivably could object to a proposed settlement solely to set up an appeal designed to obtain a nuisance value recovery and/or advantageous fee arrangement."); *Barnes v. FleetBoston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006) ("[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.").

For this reason, the Manual for Complex Litigation advises courts to distinguish between objections that "are made for improper purposes, and benefit only the objectors and their attorneys (*e.g.*, by seeking additional compensation to withdraw even ill-founded objections)" and those with "a desire to win significant improvements in the class settlement." *Manual for Complex Litigation*, *Fourth*, §21.643, p. 326. Objections, like those here, that are made for improper purposes should be overruled. *See In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013) ("courts consider the background and intent of objectors and

00058282

2

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

their counsel, particularly when indicative of a motive other than putting the interest of the class members first.")

Palmer is an attorney who makes his living objecting to settlements, not because he provides any added benefit to class members, but because he appeals his unsuccessful objections and holds up relief to the classes in an effort to be paid off by the parties' counsel. *See* Oppo. to Motion to Quash at 4-6. "Mr. Palmer has been deemed a 'serial objector' by several courts." *See In re Oil Spill*, No. MDL 2179 Section J, 2013 U.S. Dist. LEXIS 4595, *154 n.40 (E.D. La. Jan. 11, 2013). Courts have also found that Palmer repeatedly engaged in bad faith when objecting to settlements. *See In re Uponor, Inc.*, No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140, at *8 (D. Minn. Sept. 11, 2012) (imposing $170,000 appeal bond upon finding "that the Palmer Objectors have evidenced bad faith and vexatious conduct."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M07-1827, 2013 U.S. Dist. LEXIS 34845 (N.D. Cal. Mar. 12, 2013) (finding Palmer and his objector clients (his wife and aunt) in civil contempt and awarding monetary sanctions for violating court order that the objectors appear for deposition); *Heekin v. Anthem, Inc.*, No. 05-cv-01908, 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013) (imposing a $250,000 appeal bond after finding convincing evidence of bad faith or vexatious conduct by Mr. Palmer and his client); Oppo. to Motion to Quash, Ex. I (*Arthur v. Sallie Mae, Inc.* hearing transcript) at 8, 10 and 14 (detailing Palmer's "misrepresentations" to the court). As a part of his scheme, Palmer routinely uses the same "objectors" including Blanchard and McBean. *See* Exs. L, M, and N to Opposition to Motion to Quash (objections previously filed by Blanchard and McBean while represented by Palmer).

Palmer's motivations are the same here. For these reasons, the Court should overrule the objection because it is brought for improper reasons.

00058282

3

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

## III. THE OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED

### A. The Lack of Objections Indicates the Settlement's Fairness

The number of class members that object to a settlement may be considered in determining whether the settlement is fair, reasonable, and adequate. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness"); *McPhail v. First Command Financial Planning, Inc.*, No. 05cv179, 2009 U.S. Dist. LEXIS 26544, at *17 (S.D. Cal. Mar. 30, 2009) (same); *Shames v. Hertz Corp.*, No. 07-CV-2174, 2012 U.S. Dist. LEXIS 158577, at *26 (S.D. Cal. Nov. 5, 2012) (same).

With the exception of Palmer's objectors, the reaction of the Class has been overwhelmingly positive. After a robust notice program (*see* Azari Final Approval Decl., ¶¶17-18),[1] only McBean and Blanchard objected. That the vast majority of the Class approved of the Settlement indicates it should be approved.

### B. The McBean Objection Is Defective

The McBean objection does not comply with the requirements for objecting as set forth in the Notice approved by the Court. The Court's Notice requires that any objector "must send a letter to the Court and the parties saying that [he/she] object[s] to the settlement," with his/her "name, address, telephone

---

[1] *See also id.* at ¶10 (81.6% of adults who take an over-the-counter remedy for weight loss were reached 3.2 times).

number, your signature, and the reasons you object to the settlement." Doc. 1607-3 at 6. McBean never provided her address or telephone number. *See* Docs. 1640, 1640-2. As discussed below, this information is routinely required in class settlements to ensure that the objector is a real class member. Because McBean did not comply with the requirements of the Notice and Settlement, her objection should be stricken or overruled.

### C. The Objectors Do Not Meet Their Burden

McBean and Blanchard "bear the burden of proving any assertions they raise challenging the reasonableness of [the] class action settlement." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379, 2013 U.S. Dist. LEXIS 37286, at *33 (N.D. Cal. 2013) (citing *U.S. v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)). The Objectors do not meet their burden of upsetting the Settlement.

#### 1. The Requirements for Objecting Are Fair

The Objectors first argue that the requirements for objecting set forth in the Notice are unnecessary and that only an objector's name, his/her affidavit attesting to class membership, and his/her attorney's contact information should be required. Obj. at 2.[2]

The Settlement requires that all objectors provide their name, address, and telephone number. Settlement at 24. Requiring this information from objectors is routinely approved in class settlements. *See*, *e.g.*, *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290, 2013 U.S. Dist. LEXIS 15731, at *32 (S.D. Cal. Feb. 5, 2013) (required objectors to provide "full name, [and] address and telephone number"); *In re Toyota Motor Corp. Unintended Acceleration Litig.*, No. 8:10-ML2151, 2012 U.S. Dist. LEXIS 183942, at *216-17 (C.D. Cal. Dec. 28, 2012) (same); *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 10cv1777, 2012 U.S. Dist. LEXIS 125415, at *9 (S.D. Cal. Sept. 4, 2012)

---

[2] "Obj." refers to Objections to Proposed Settlement and Notice of Intent to Appear (Doc. 1640) filed March 22, 2013.

00058282

5

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

(same). This is to ensure that the objections are made by real class members and are not fraudulent. *See Moore v. Verizon Communs., Inc.*, No. 09-1823, 2013 U.S. Dist. LEXIS 15609, at *12 (N.D. Cal. Feb. 5, 2013) ("non-class members have no standing to object to the settlement of a class action"); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92, 2011 U.S. Dist. LEXIS 103698, at *6 (S.D.N.Y. Aug. 25, 2011) (same). For the same reasons, this information is required when submitting a claim to the Settlement. *See* Settlement, Ex. 2.

As discussed above, the Objectors are repeat players whose names have fronted objections in other class settlements in the last year (all represented by Palmer). The parties are entitled to be provided with enough basic information (such as their address and telephone number) to determine whether the objectors are real people with actual concerns. In fact, McBean's failure to provide her contact information has made it unclear whether she authorized her objection. Class Counsel attempted to serve her at two addresses (including the address listed on the claim form submitted in her name) and were informed that she did not live at those addresses.[3] *See* Opposition to Motion to Quash, at 7. Requiring objectors to demonstrate that they are actual people before holding up relief to Class members is hardly a basis for objection.

Additionally, the fact that the Settlement website contained a typo that stated all objections must be "postmarked" rather than filed by October 22, 2013, is irrelevant because the only objections were submitted by Palmer on behalf of McBean and Blanchard via ECF on October 22, 2013, and were never mailed.

### 2. The Claims Deadline is Appropriate

Next, McBean and Blanchard contend that the Court should delay ruling on final approval until all claims are submitted so that the Court can review the actual claims rate. Obj. at 2. The Objectors are wrong.

---

[3] Class Counsel should be permitted to supplement this reply with discovery taken from the objectors and their counsel.

00058282

6

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

  First, final approval of a settlement oftentimes increases media attention to a settlement and reminds class members to submit claims. Accordingly, the claims deadline is set for 30 days after the final approval hearing to allow Class members sufficient time, even after the Settlement is approved, to submit claims.

  Additionally, the rate of individual claims is entirely unrelated to the fairness of the *cy pres* distribution. The Ninth Circuit expressly permits *cy pres* distributions even without individual distribution to class members. *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) (*cy pres* is appropriate where "proof of individual claims would be burdensome or distribution of damages costly"). For example in *Lane v. Facebook, Inc.*, 696 F.3d 811, 817, 821 (9th Cir. 2013), the Ninth Circuit recently affirmed a district court's final approval of a settlement that provided no individual relief to class members but instead established a *cy pres* fund for the creation of a charity organization. As the Ninth Circuit affirmed, the *cy pres* distribution must only "bear[] a substantial nexus to the interest of the class members" (*id.* at 821), and as demonstrated below, Plaintiffs have met that burden.

  The Objectors cite *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) without any analysis. This out-of-circuit opinion merely holds that in determining whether a *cy pres* distribution is fair, "a district court **may** consider, among other things, the number of individual awards…." *Id.* at 174 (emphasis added). But here, Ninth Circuit precedent does not require a court to consider individual claims (and in fact that would be contrary to the purpose of many *cy pres* awards).

  **3. The Claims Process is Fair, Reasonable, and Adequate**

  The Objectors next contend the claims process is "difficult" and "will reduce legitimate, meritorious claims…." Obj. at 2. The claims process is intentionally uncomplicated.

00058282

7

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

The Settlement allows claimants to obtain claim forms from the Settlement website, submit their claims through the U.S. mail or, as most choose to do, online. Settlement at 19. The claim form informs the claimant of the products at issue and the relief that is available, and provides straightforward instructions on how to fill out the form and when proof of purchase is required. *Id.*, Ex. 2. Claimants then must provide only the information needed to process the claim and mail a check or product: their name, address, telephone number, and email address, affirm that they purchased one or more of the products at issue, indicate whether they want to receive a cash payment or a Product Bundle (and how many), and sign or electronically sign the claim form. *Id.* This simple claim form and the simple process for which claimants can submit the claim forms is intended to drive up the claims rate. This objection should be overruled.

### 4. The *Cy Pres* Distribution is Fair and Reasonable

The Objectors first argue the *cy pres* component does not satisfy *Dennis v. Kellogg*, 697 F.3d 858 (9th Cir. 2012) because "[t]here is an insufficient nexus between benefiting personal injury claimants and benefiting class members…" Obj. at 2. In *Kellogg*, the Ninth Circuit did not create new law but merely affirmed that "[a] *cy pres* award must be 'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members,' and must not benefit a group 'too remote from the plaintiff class.'" *Id.* at 865 (quoting *Six (6) Mexican American Workers*, 904 F.2d at 1308). The court held that the approval of *cy pres* distribution to food organizations that feed the indigent was an abuse of discretion because it was "divorced from the concerns" involved in the lawsuit regarding the false advertising at issue. *Id.* at 865-66.

Here, the unclaimed cash funds do not go to some charity, but to actual Hydroxycut purchasers who 1) purchased the products as a result of the alleged false advertising; and 2) suffered from the very personal injuries alleged to have made those advertisements false. Thus, the *cy pres* award is not "divorced from

00058282

8

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

1  the concerns" of this lawsuit. As the Ninth Circuit recently recognized, the "*cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). Here, the next best class of beneficiaries is the Hydroxycut purchasers who suffered physical injuries as a result of the false advertising.

Second, and again without analysis, the Objectors contend that the *cy pres* provision that requires any remaining funds to be paid to ChangeLab Solutions or some other similar organization after 6 years does not satisfy *Kellogg*. The court in *Kellogg* was concerned that the selected *cy pres* recipient group that provided food to the indigent did not relate at all to false advertising which was at issue in the lawsuit. 697 F.3d at 867. But here, ChangeLab specifically "work[s] to combat false and misleading advertising…." Ashe Decl., ¶6. Thus, any funds distributed to ChangeLab "will be used to combat false advertising generally" concerning foods and the obesity epidemic in the United States. *Id.*, ¶11. The claims here relate to the false advertising of a product that is supposed to help you lose weight. Thus, ChangeLab's purpose relates to the underlying objective of the lawsuit. *See Facebook*, 696 F.3d at 818 (affirming *cy pres* distribution to organization that would educate people about protecting personal information online).

Third, the *cy pres* of remaining Additional Product to consumers is not "a marketing scheme" and satisfies *Kellogg*. *See* Obj. at 3. The Additional Product component is designed to distribute any remaining product to Hydroxycut purchasers (many of whom are Class Members) instead of reverting back to defendants. As a result, if any product remains, consumers who purchase Hydroxycut-branded products will receive the Additional Product in addition to their purchase as an added benefit. The Additional Product does not increase the purchase price paid by the consumer or eliminate any promotional product the

00058282

9

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

consumer would have otherwise received. The Class is made up of consumers who purchased Hydroxycut-branded products and thus, this *cy pres* distribution is directly related to the class of plaintiffs involved. *Cf. Kellogg*, 697 F.3d at 866 (expressing concern that the *cy pres* recipient had little to do with the "class of plaintiffs involved").

Finally, all claimants whether they submit a proof of purchase or not will receive relief before any money or product is distributed for purposes of *cy pres*. *See* Settlement at 14 ("Any amount remaining in the Cash Component after payment of …Eligible Cash Claims"), 16 ("Any amounts remaining in the Product Component after payment of Eligible Product Claims"). Settlements are not required to fully compensate class members in order to be fair, reasonable, and adequate and *Kellogg* does not impose such a requirement. *See In re TD Ameritrade Account Holder Litig.*, No. 07-2852, 2011 U.S. Dist. LEXIS 103222, at *32 (N.D. Cal. Sept. 13, 2011) ("[T]he possibility that a class Settlement does not fully compensate each class member for the full amount of his or her loss is not ipso facto grounds for rejecting the Settlement."). The purpose of the product cap for claimants without receipts is to ensure that the relief is fairly distributed for valid claims. Such requirements are routinely approved in class settlements. *See*, *e.g.*, *In re Groupon, Inc.*, No. 11md2238, 2012 U.S. Dist. LEXIS 185750, at *22-23 (S.D. Cal. Sept. 28, 2012) (overruling objection to proof of purchase requirement). Accordingly, the *cy pres* distribution should be approved.

### 5. The "Confidentiality Provision" Does Not Violate Rule 23 or Due Process

Again with citation to any law or analysis, the Objectors assert that the "confidentiality provision" violates Rule 23 and due process protections. Obj. at 3. The Settlement simply requires that the amounts paid to individual Personal Injury Claimants remain confidential. *See* Settlement at 15. However, these

settlements are not conducted in complete secrecy because the Court and Class Counsel will be informed every six months of the total amounts being distributed to Personal Injury Claimants. *Id.* These reports are not confidential and thus, also accessible by Class members, although it is not clear why a Class member would need this information. Finally, Class Counsel are authorized to know the amount of individual payments when they are distributed. (*Id.*, §IV.C.1.b).

### 6. Notice Was the Best Practicable

The Objectors simply state (again without factual support) that individual notice by email should be provided to every email address that the retailers have on record. Obj. at 4. The retailers, which include Wal-Mart and Walgreens, sell hundreds of thousands of different products that are entirely unrelated to this lawsuit and the Iovate products. Direct notice to these consumers that have no connection to the lawsuit would be unduly burdensome and needlessly increase claims administration costs. *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 327 (E.D. Pa. 1993) ("In striking the balance between protecting the rights of absent class members and making rule 23 workable, courts have held that it is not necessary to send individual notices to an overinclusive group of people simply because that group contains some additional class members."). Additionally, emails are not necessarily the best notice practicable because they often are blocked and the Class goes back several years resulting in many emails being outdated.

Here, the extensive publication notice that reached 81.6% of the relevant demographic with a frequency of 3.2 times, is well within the standard set by the Federal Judicial Center. *See* Doc. 1637-1 at 42-43; Azari Final Approval Decl., ¶¶10, 21-23; FitzGerald Decl., ¶3; *Managing Class Action Litigation: A Pocket Guide for Judges* at 27 (70-95% reach to class members is the norm) (available at http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf).

00058282

11

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### D. The Remaining Boilerplate Objections Should Be Overruled

The remaining objections should be overruled as they are boilerplate and have no application to the facts of this Settlement. *See In re Netflix Privacy Litig.*, 2013 U.S. Dist. LEXIS 37286 at *33.

#### 1. Rule 23 Requirements

The Objectors do not articulate any aspect of Rule 23 that is not met. Obj. at 4. Plaintiff has analyzed each element of Rule 23 in depth and has demonstrated why it is satisfied. *See* Doc. 1637-1 at 37-39. Even so, if this case did not meet the requirements of Rule 23 outside the settlement context, this is even more reason why the Settlement should be approved.

#### 2. Attorneys' Fees and Expenses

Standard practice for serial objectors is to attack class counsel's fee request, regardless of the requested fee or work performed. As detailed in the opening brief, Class Counsel expended significant time litigating this case, including significant motion practice and discovery, and will have spent considerably more time by the time final approval is obtained, the Settlement defended on appeal, and relief distributed. *See* Blood Preliminary Approval Decl., ¶3. Class Counsel requested a fee award of $5 million and expenses up to $300,000, which represents only 21% of the total monetary value of the Settlement. This falls well within the typical percentage awarded and is wholly reasonable given the effort on a wholly contingent basis that Counsel expended in obtaining the significant relief for the Class. *See* Doc. 1637-1 at 44-45 (citing cases where fees are 25% of the recovery and more).

The Objectors point to no evidence of "self-dealing" as indicated in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). There, the requested attorneys' fees were eight times the class recovery and the district court did not properly analyze the requested fee award. *Id.* at 947. The Ninth Circuit did not hold that the award of fees was improper but rather, remanded so

the district court could properly exercise its discretion. *Id.* at 950. Here, the requested award for attorneys' fees and expenses is only 21% of the $25.3 million total monetary value of the Settlement and Class Counsel have demonstrated that the award is reasonable. *See* Doc. 1637-1 at 46-55.

Finally, there is no "secret fee allocation" as Class Counsel applied to the Court for an award of attorneys' fees and expenses. *In re High Sulfer Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 224 (5th Cir. 2008), cited by the Objectors, concerns the creation of a committee that submitted confidential documents to the court for distribution of attorneys' fees. The Fifth Circuit held that was improper. *Id.* at 235. Here, there is no fee allocation committee being requested and all submissions concerning attorneys' fees are public.

### 3. The Catch-all Objection Should Be Overruled

Finally, the Objectors seek to assert the same objections made by any other objectors. Obj. at 4. This objection must be overruled as there is no basis asserted and McBean and Blanchard are the only objectors.

## IV. CONCLUSION

For the foregoing reasons, the objections should be overruled and final approval of the Settlement granted.

Dated: April 16, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II

By:   *s/ Timothy G. Blood*
TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
 & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
 (CA 203111; AZ 020191)
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Facsimile:  (602) 798-5860
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

*Co-Lead Class Counsel*

00058282

14

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

BLOOD HURST & O'REARDON, LLP

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 16, 2013.

                                      *s/ Timothy G. Blood*
                                      TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA  92101
Telephone:  619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

BLOOD HURST & O'REARDON, LLP

00058282

15

Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT