BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
LESLIE E. HURST (178432)
THOMAS J. O'REARDON II (247952)
701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA N. SYVERSON
  (CA 203111; AZ 020191)
2325 E. Camelback Road, Suite 300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Facsimile:  (602) 798-5860
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

Co-Lead Class Counsel

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | Case No.: 3:09-MD-02087-BTM(KSC) |
| ANDREW DREMAK, on Behalf of Himself, All Others Similarly Situated and the General Public,<br><br>        Plaintiff,<br><br>vs.<br><br>IOVATE HEALTH SCIENCES GROUP, INC., *et al.*,<br><br>        Defendants. | Case No.: 3:09-CV-01088-BTM(KSC)<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO QUASH SUBPOENAS**<br><br><br>Dept.:     15B, 15th Floor - Annex<br>Judge:     Hon. Barry Ted Moskowitz |

00058667

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ................................................................................................ 1

II. THE REQUESTED DISCOVERY ..................................................................... 2

III. PROFESSIONAL OBJECTIONS, MR. PALMER AND HIS CLIENTS ................................................................................................... 3

    A. Courts Should Identify and Overrule Serial Objections, Not Empower the Objector ............................................................... 3

    B. Mr. Palmer Is a Serial Objector with a Shameful History ................ 5

    C. Mr. Blanchard and Ms. McBean Have Been Previously Used in Frivolous Objections ............................................................. 7

IV. THE COURT SHOULD PERMIT THE REQUESTED DISCOVERY ......................................................................................................... 8

V. CONCLUSION .................................................................................................. 13

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Arthur v. Sallie Mae, Inc.*,
   No. 10-cv-198 (W.D. Wash. Sept. 14, 2012) ............................................ 6, 7, 9

*Barnes v. Fleet Boston Fin. Corp.*,
   No. 01-10395, 2006 U.S. Dist. LEXIS 71072
   (D. Mass. Aug. 22, 2006) .................................................................................. 4

*City of Greenville v. Syngenta Crop Prot., Inc.*,
   No. 10-cv-188, 2012 U.S. Dist. LEXIS 130383
   (S.D. Ill. Sept. 13, 2012) .................................................................................... 6

*Dennings v. Clearwire Corp.*,
   No. 10-1859 (W.D. Wash. Dec. 11, 2012) ...................................................... 10

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) ............................................................................................... 4

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   183 F.3d 1 (1st Cir. 1999) ................................................................................. 4

*Embry v. ACER America Corp.*,
   No. 09-cv-1808 (N.D. Cal.) ......................................................................... 12, 13

*Fishbein v. All Market Inc. d/b/a Vita Coco*,
   No. 11-cv-5580 (S.D.N.Y.) ............................................................................... 7

*Gemelas v. Dannon Co.*,
   No. 08-cv-236, 2010 U.S. Dist. LEXIS 99503
   (N.D. Ohio Aug. 31, 2010) ................................................................................ 5

*Gould v. Alleco, Inc.*,
   883 F.2d 281 (4th Cir. 1989) ............................................................................ 8

*Heekin v. Anthem, Inc.*,
   No. 05-cv-1908, 2013 U.S. Dist. LEXIS 26700
   (S.D. Ind. Feb. 27, 2013) .............................................................................. 5, 6

*Herfert v. Crayola, LLC*,
   No. 11-cv-1301 (W.D. Wash. Aug. 17, 2012) .................................................. 6

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

*In re Cathode Ray Antitrust Litig.*,
   281 F.R.D. 531 (N.D. Cal. 2012) ................................................................ 1, 2

*In re Checking Account Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011)............................................................ 4

*In re Law Office of Jonathan E. Fortman, LLC*,
   No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903
   (E.D. Mo. Feb. 1, 2013)............................................................................ 1, 3, 9

*In re MagSafe Apple Power Adapter Litig.*,
   No. 09-1911 (N.D. Cal. July 6, 2012) .............................................................. 8

*In re MagSafe Apple Power Adapter Litig.*,
   No. 09-1911 (N.D. Cal. July 6, 2012) .............................................................. 5

*In re Oil Spill*,
   No. 12-968, 2013 U.S. Dist. LEXIS 4595
   (E.D. La. Jan. 11, 2013)................................................................................ 1, 5

*In re Reebok Easytone Litig.*,
   No. 12-MC-2 (S.D. Tex. Jan. 6, 2012) ........................................................... 10

*In re Static Random Access Memory Antitrust Litig*
   No. M:07-CV-01819, 2011 U.S. Dist. LEXIS 112915
   (N.D. Cal. Sept. 23, 2011). ............................................................................ 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-1827, 2013 U.S. Dist. LEXIS 34845
   (N.D. Cal. Mar. 12, 2013) ........................................................................ 11, 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. 07-1827, 2013 U.S. Dist. LEXIS 23109
   (N.D. Cal. Feb. 19, 2013) ........................................................................... 5, 11

*In re Uponor, Inc.*,
   No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140
   (D. Minn. Sept. 11, 2012)......................................................................... 5, 6, 8

*Patch v. Millenium Prods., Inc.*,
   No. BC448347 (Los Angeles Cty. Sup. Ct.) ..................................................... 7

*Poss v. 21st Century*,
   No. BC297438 (Los Angeles Super. Ct. April 25, 2011) ................................ 5

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
   59 F. Supp. 2d 1021 (N.D Cal. 2001) ................................................................. 8

*Stern v. AT&T Mobility Corp.*,
   No. 05-cv-8842 (C.D. Cal. Oct. 15, 2010) ........................................................ 10

*Sullivan v. Kelly Services, Inc.*,
   No. 08-cv-3893 (N.D. Cal. Aug. 10, 2011) ................................................. 3, 11

**FEDERAL RULES**

Fed. R. Civ. P. 11 ............................................................................................................. 6

Fed R. Civ. P. 23(e) ......................................................................................................... 8

Fed R. Civ. P. 30(a)(1) ..................................................................................................... 8

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg,
   4 *Newberg on Class Actions* §11:55 (4th ed. 2002) ........................................... 8

Alba Conte & Herbert B. Newberg,
   5 *Newberg on Class Actions* §15:37 (4th ed. 2002) ........................................... 4

Bruce D. Greenberg, *Keeping the Flies out of the Ointment:*
   *Restricting Objectors to Class Action Settlements*,
   84 St. John's L. Rev. (2010) ............................................................................... 4

Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging,
   *Managing Class Action Litigation:*
   *A Pocket Guide for Judges* (3d ed. 2010) .......................................................... 4

*Manual for Complex Litigation* (Fourth) §21.643 ........................................... 2, 3, 9

## I. INTRODUCTION

Courts and commentators have recognized the need to take discovery from "professional" or "serial" objectors and their attorneys to determine whether the objectors are actually members of the class, have a legitimate basis for their objections and whether the objection is motivated by self-interest rather than a desire to win significant improvements to the class settlement. *See, e.g., In re Cathode Ray Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012); *In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013).

Here, after notice was provided to the Class, only one objection was lodged. The objection covers the waterfront – literally every aspect of the settlement is attacked, albeit superficially. The objectors have filed similar objections in the past and one has been represented by the same lawyer representing them here: Darrell Palmer, one of the most prolific serial objector attorneys in the country. *See In re Oil Spill*, No. 12-968, 2013 U.S. Dist. LEXIS 4595, at *154 (E.D. La. Jan. 11, 2013) ("Mr. Palmer has been deemed a 'serial objector' by several courts.").

Courts, the Manual for Complex Litigation, and commentators have recognized the problem posed by serial objectors. The serial objector files an objection with the purpose of exacting payment in return for dismissing the objection. If the payoff is not made right away, he or she loses the objection and then files a notice of appeal to increase leverage by taking advantage of the accompanying delay.

Mr. Palmer has played this game many dozens of times over the past decade. Even in his Motion to Quash, he describes how it often works: counsel "generally pick up the phone to call an objector's lawyer to discuss the concerns raised in the objection." *See* D.E. No. 1641 ("Motion to Quash") at 2, n.1. The call is not intended to better the settlement, but rather, to negotiate the amount of

money Mr. Palmer wants to withdraw the objection.

For this reason, the Manual for Complex Litigation advises that courts should seek to distinguish between legitimate objections, which play an important role in the class action approval process, and illegitimate ones:

> Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys (e.g., by seeking additional compensation to withdraw even ill-founded objections). An objection, even of little merit, can be costly and significantly delay implementation of a class settlement. Even a weak objection may have more influence than its merits justify in light of the inherent difficulties that surround review and approval of a class settlement. Objections may be motivated by self-interest rather than a desire to win significant improvements in the class settlement. A challenge for the judge is to distinguish between meritorious objections and those advanced for improper purposes.

*Manual for Complex Litigation* (Fourth) §21.643.

As other courts have permitted, Class Counsel seek discovery to assist the Court in determining whether Mr. Palmer's objection is "advanced for improper purposes" and to ensure a full and complete record for the appeal that will likely follow after this Court overrules the objection. Thus, Class Counsel seek to depose Mr. Blanchard and Ms. McBean and to obtain certain records from Mr. Palmer.[1]

## II.   THE REQUESTED DISCOVERY

Plaintiff seeks to depose Mr. Blanchard and Ms. McBean on topics including (1) the basis and reasoning behind their objections; (2) whether Mr. Blanchard and Ms. McBean have standing as class members to object to the settlement; and (3) whether they and their counsel are objecting for legitimate or improper purposes. *See In re Cathode Ray Antitrust Litig.*, 281 F.R.D. at 533 (ordering objector's deposition and document production on "the objector's

---

[1] At this point, Class Counsel need not depose Mr. Palmer, and request an opportunity to decide whether a deposition is necessary after the requested documents have been produced.

1   standing, the bases for his current objections, his role in objecting to this and
2   other class settlements, and his relationships with the counsel that are believed to
3   be behind the scenes manipulating him").

4   Plaintiff also seeks documents from Mr. Palmer relating to his (1) history
5   of objecting to class action lawsuits, (2) history of receiving payments in
6   exchange for dismissing objections to class action settlements, (3) instances in
7   which Mr. Palmer has been sanctioned or had appeal bonds imposed against him
8   or his clients in connection with objections to class action settlements, and (4)
9   the retention of Mr. Blanchard and Ms. McBean in this lawsuit. *See* Ex. E
10  (Subpoena to Mr. Palmer) at p.6.[2] Plaintiff seeks this information "because when
11  assessing the merits of an objection to a class action settlement, courts consider
12  the background and intent of objectors and their counsel, particularly when
13  indicative of a motive other than putting the interest of the class members first."
14  *In re Law Office of Jonathan E. Fortman, LLC*, 2013 U.S. Dist. LEXIS 13903, at
15  *3; *see also Manual for Complex Litigation* (Fourth) §21.643 (the court should
16  "distinguish between meritorious objections and those advanced for improper
17  purposes"); Ex. F, *Sullivan v. Kelly Services, Inc.*, No. 08-cv-3893 (N.D. Cal.
18  Aug. 10, 2011) (order granting plaintiff's motion to depose the custodian of
19  records for Law Offices of Darrell Palmer "regarding any fee agreement between
20  the Law Offices of Darrell Palmer and [the objector]").

21  **III. PROFESSIONAL OBJECTIONS, MR. PALMER AND HIS CLIENTS**

23  **A.   Courts Should Identify and Overrule Serial Objections, Not Empower the Objector**

25  With a serial objection, "the unfortunate game is to lodge pro forma

---

[2] "Ex. Citations refer to documents attached to the concurrently filed Declaration of Thomas J. O'Reardon II ("O'Reardon Decl.")."

objections at the trial stage, then negotiate a private resolution in order to drop the invariable notice of appeal.  Once the case has progressed beyond the trial court, there is no longer any accountability for side payments to objectors' counsel, and the game is on." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 n.30 (S.D. Fla. 2011) (internal quotations omitted). "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing." *Barnes v. Fleet Boston Fin. Corp.*, No. 01-10395, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006); *see also Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, at 6-7 (1st Cir. 1999) ("[W]e recognize that a class member and his or her attorney conceivably could object to a proposed settlement solely to set up an appeal designed to obtain a nuisance value recovery and/or advantageous fee arrangement."); *Devlin v. Scardelletti*, 536 U.S. 1, 23 n.5 (2002) (Scalia, J., dissenting) (observing that professional objectors' penchant for filing "canned" briefs and baseless objections often leads to baseless appeals in the quest for a fee); Bruce D. Greenberg, *Keeping the Flies out of the Ointment: Restricting Objectors to Class Action Settlements*, 84 St. John's L. Rev. 949, 950 (2010) (describing how objections are used for improper purposes); Federal Judicial Center, Barbara J. Rothstein & Thomas E. Willging, *Managing Class Action Litigation: A Pocket Guide for Judges*, at 17 (3d ed. 2010) ("be wary of self-interested professional objectors"); Alba Conte & Herbert B. Newberg, 5 *Newberg on Class Actions* §15:37 (4th ed. 2002).

The court's role is to determine whether the objection was brought out of a true desire to improve the settlement, or for an improper purpose, and overrule those brought for an improper purpose.  Class Counsel's role is to provide the

court with the information it needs to make this determination, and to ensure an adequate record is created for the inevitable appeal.

### B. Mr. Palmer Is a Serial Objector with a Shameful History

Since approximately 2007, Mr. Palmer has filed objections in at least 79 cases in federal court and an unknown number in state courts. *See* O'Reardon Decl., ¶3. Courts have deemed Mr. Palmer a serial objector. *See, e.g., In re Oil Spill*, 2013 U.S. Dist. LEXIS 4595, at *154 n.40; *Heekin v. Anthem, Inc.*, No. 05-cv-1908, 2013 U.S. Dist. LEXIS 26700, at *9 (S.D. Ind. Feb. 27, 2013); *Gemelas v. Dannon Co.*, No. 08-cv-236, 2010 U.S. Dist. LEXIS 99503, at *5 (N.D. Ohio Aug. 31, 2010); *In re Uponor, Inc.*, No. 11-MD-2247, 2012 U.S. Dist. LEXIS 130140, at *8-9 (D. Minn. Sept. 11, 2012) (Mr. Palmer "is believed to be a serial objector to other class-action settlement[s]"). Mr. Palmer admits he "filed objections in many, many cases." Ex. G (Fairness Hearing Transcript from *In re Oil Spill*) at pp. 223-24. *See also* Ex. U (Appeal Bond Hearing Transcript in *Poss v. 21st Century*, No. BC297438 (Los Angeles Super. Ct. April 25, 2011) at p.18 (noting Mr. Palmer's history of objecting: "There is a history here, and the history is not one that you [Mr. Palmer] should be proud of.").

Mr. Palmer repeatedly has been found to engage in bad faith or vexatious conduct. *In re Uponor, Inc.*, 2012 U.S. Dist. LEXIS 130140, at *8 (imposing $170,000 appeal bond upon finding "that the Palmer Objectors have evidenced bad faith and vexatious conduct."); *Heekin*, No. 11-md-2247, 2012 U.S. Dist. LEXIS 130140, at *9-10 (bad faith and vexatious conduct); *In re TFT-LCD Antitrust Litig.*, No. 07-1827, 2013 U.S. Dist. LEXIS 23109, at *59-60 (N.D. Cal. Feb. 19, 2013) (finding Mr. Palmer and his objector clients (his wife and aunt) in civil contempt and awarding monetary sanctions for violating order compelling objectors to appear for deposition); Ex. H *In re MagSafe Apple Power Adapter Litig.*, No. 09-1911, at p. 3 (N.D. Cal. July 6, 2012) (imposing

BLOOD HURST & O'REARDON, LLP

1   appeal bond upon finding that Mr. Palmer's objections are "without merit"); *City
2   of Greenville v. Syngenta Crop Prot., Inc.*, No. 10-cv-188, 2012 U.S. Dist.
3   LEXIS 130383, at *9 (S.D. Ill. Sept. 13, 2012) (finding Mr. Palmer's objection
4   untimely, but stating court would have "addressed any frivolous objections using
5   Rule 11 sanctions.").

6   While representing objectors, Mr. Palmer has had his *pro hac vice* status
7   revoked or not approved for concealing that he is a felon who has been
8   suspended from practice law by the state bar associations of Arizona, California
9   and Colorado. *See* Ex. I (Fairness Hearing Transcript in *Arthur v. Sallie Mae,
10  Inc.*, No. 10-cv-198 (W.D. Wash. Sept. 14, 2012) ("*Sallie Mae* Hearing
11  Transcript")) at p. 8 ("Mr. Palmer improperly certified and declared under
12  penalty of perjury that he did not have a disciplinary history."), 10 and 14
13  (detailing Mr. Palmer's "several other misrepresentations"); Ex. J (order denying
14  Mr. Palmer's *pro hac vice* application in *Herfert v. Crayola, LLC*, No. 11-cv-
15  1301 (W.D. Wash. Aug. 17, 2012)); *cf. Heekin*, 2013 U.S. Dist. LEXIS 26700, at
16  *9 (Mr. Palmer withdrew his request to appear *pro hac vice* after the court
17  scheduled a conference to discuss his motion); *In re Uponor, Inc.*, 2012 U.S.
18  Dist. LEXIS 130140, at *8-9 ("the Palmer objectors appear to be represented by
19  an attorney who has not entered an appearance in this case and who is believed to
20  be a serial objector").

21  Mr. Palmer describes objecting to class action settlements as a "hobby,"
22  while boasting that he has made "a lot" of money dismissing objections in return
23  for payment. *See* Ex. K at 33 minutes ("hobby") and at 44 minutes, 55 seconds
24  (money) (audio recording of Darrell Palmer speaking at a CLE panel entitled
25  "Melee In Manhattan! Class Action Objectors: Are They Protectors of Absent
26  Class Members or Merely Gadflies?" on October 14, 2011); *see also*
27  http://classactionblawg.com/2011/10/17/notes-from-the-15th-annual-national-
28

BLOOD HURST & O'REARDON, LLP

institute-on-class-actions/ (discussing the Melee In Manhattan! conference) (last visited April 8, 2013).

Mr. Palmer typically uses the same group of people as objectors. His objectors include family members such as his wife (who uses her maiden name when objecting, Alison Haley Paul), his aunt (Leveta Chesser), his brother (Norman Palmer), and others (Edwin Paul, Judy Paul, Paul Palmer, and Jeffrey Palmer), as well as employees (Margaret Strohlein). He also borrows objectors (such as Mr. Blanchard) from the small group of lawyers around the country who are also serial objectors.

### C. Mr. Blanchard and Ms. McBean Have Been Previously Used in Frivolous Objections

Mr. Blanchard has filed at least two objections in 2012, each of which was overruled. *See* Ex. L (objection in *Fishbein v. All Market Inc. d/b/a Vita Coco*, No. 11-cv-5580 (S.D.N.Y.)), and Ex. M (objection in *Patch v. Millenium Prods., Inc.*, No. BC448347 (Los Angeles Cty. Sup. Ct.)). The objections were likely ghost-written by Christopher Bandas, a Corpus Christi lawyer who frequently objects with Mr. Palmer and shares in the payoff. *Compare id. with* Ex. W (objection ghost-written by Christopher Bandas in *In re Reebok EasyTone Litig.*)

Here, Mr. Blanchard has not submitted a settlement claim. *See* O'Reardon Decl., ¶2. If he does not intend to participate in the settlement, why is he objecting?

Ms. McBean previously filed at least one objection in which she was represented by Mr. Palmer. The objection, which was overruled, was also superficial. *See* Ex. N (objection in *Arthur v. Sallie Mae, Inc.*, No. 10-cv-198 (W.D. Wash.)). As discussed above, the court in *Sallie Mae* caught Mr. Palmer concealing his past felony and the various states bar disciplinary actions against him.

  Here, it is unknown whether Ms. McBean actually authorized the objection or knows anything about it. Class Counsel attempted to serve her at two addresses, including the address listed on the settlement claim form submitted in her name. *See* Exs. B-C. At both addresses, the process server was told that she no longer lived at the addresses. Based on the statements of the current resident, she would not have lived at the address listed on the claim form at the time the claim form was submitted. *See* Ex. C. Thus, it is unclear whether Ms. McBean is even aware of the objection. A deposition will provide answers.

## IV. THE COURT SHOULD PERMIT THE REQUESTED DISCOVERY

  Rule 30(a)(1) provides that "[a] party may, by oral questions, depose any person, including a party, without leave of court…" Immediately upon receiving Mr. Palmer's objection, Class Counsel issued and attempted to serve the subject subpoenas to meet the impending deadlines for final approval briefing.

  Contrary to the motion to quash, the subpoenas are not "improper," "abusive," "oppressive" or "malicious." First, the discovery is needed to determine whether the objectors are actually members of the class. If they are not members, they do not have standing to object. *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."); *see also San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D Cal. 2001); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* §11:55 (4th ed. 2002).

  In the past, Mr. Palmer has been caught using objectors who were not members of the class. *See, e.g., In re Uponor, Inc.*, 2012 U.S. Dist. LEXIS 130140, at *8 ("[m]ost critically, the Palmer Objectors are not class members"); Ex. H (Order Granting Appeal Bond in *In re MagSafe Apple Power Adapter Litig.*, No. 09-1911 (N.D. Cal. July 6, 2012)) at p.3 ("[a]s a threshold matter, the

BLOOD HURST & O'REARDON, LLP

Court has significant concern regarding whether Objector Sweeney is even a member of the settlement class"); Ex. I (*Sallie Mae* Hearing Transcript) at p.17 ("it is highly questionable whether [Mr. Palmer's client] even has standing in this action"). As Ms. McBean's circumstances demonstrate, it is not clear that the objectors know anything about the objection, authorized it, support it or have any understanding of it.

Class Counsel also wish to probe aspects of the objection. For example, the objection states:

> Objection is made to the extent the proponents of this settlement do not satisfy their burden of proving commonality, predominance, superiority and adequacy of class counsel and class representatives.

*See* D.E. No. 1640 at 4. Why would a purchaser of this product seek to defeat certification of the class, effectively eliminating his, her and the class's ability to obtain redress for the alleged false advertising? The objection also contends that the claims process is "difficult" and "will reduce legitimate, meritorious claims." Someone submitted a claim in Ms. McBean's name with no apparent difficulty. It does not appear that Mr. Blanchard attempted to submit a claim at all. The objection is, predictably, silent on any details. Without explanation, the objection contends the settlement is insufficient. Why do the objectors think it is, if they do at all?

Discovery is also appropriate because of the history of Mr. Palmer and his clients. The information sought is "relevant to assessing the merits of the objection," because "courts consider the background and intent of objectors and their counsel, particularly when indicative of motive other than putting the interest of the class members first." *See In re Law Office of Jonathan E. Fortman, LLC*, 2013 U.S. Dist. LEXIS 13903, at *3-4; *see also Manual for Complex Litigation* (Fourth) §21.643, at p. 326.

BLOOD HURST & O'REARDON, LLP

Taking discovery from serial objectors (as opposed to regular class members who may object) is commonplace. By interjecting themselves as active participants in the litigation and possibly delaying the action for years, these professionals should submit to discovery. In denying a motion to quash brought by a serial objector, one court explained:

> I cannot believe that it would be right for someone to be able to simply file an objection and then not be questioned further about it. . . . . [I]f I were the court looking at this fairness and holding the Fairness Hearing, I would want to know from Ms. Rivero for instance, what are the bases of her objection. . . . I do not see that it's fair that Ms. Rivero can just file an objection and then leave it at that. And if I were the district court, I would want to know what's going on and why she filed objections, especially in view of the fact that she can opt out – but she doesn't want to opt out, she wants to make a claim and file objections. . . . [Ms. Rivero] has injected herself into this – the fairness of the settlement by stating that she has an objection, and I just don't see that there's anything wrong with trying to go behind that and ask her a few questions.

Ex. O at p. 42-43 (motion to quash hearing transcript from *In re Reebok Easytone Litig.*, No. 12-MC-2 (S.D. Tex. Jan. 6, 2012)).

Similarly, in *Dennings v. Clearwire Corp.*, No. 10-1859 (W.D. Wash. Dec. 11, 2012), the court ordered depositions where "Plaintiffs have demonstrated legitimate concerns regarding whether the objections made [] are serious and whether their attorney is a so-called 'professional objector.'" *See* Ex. P. *See also In re Static Random Access Memory Antitrust Litig.* ("*In re SRAM*"), No. M:07-CV-01819, MDL No. 1819, 2011 U.S. Dist. LEXIS 112915, at *27-28 (N.D. Cal. Sept. 23, 2011) (denying Mr. Palmer's motion to quash and ordering his clients to produce documents sought by subpoena (attached hereto as Ex. Q) and sit for deposition); Ex. R (order from *Stern v. AT&T Mobility Corp.*, No. 05-cv-8842 (C.D. Cal. Oct. 15, 2010) denying Mr. Palmer's motion to quash and ordering his clients to be deposed regarding their "standing, factual allegations

supporting objections, and whether objections in other class action cases have been made by the objectors").

Despite generalized cries of "abuse" and "malice," Mr. Palmer regularly loses motions to quash based on the same arguments he makes here. *See In re SRAM*, 2011 U.S. Dist. LEXIS 112915, at *27-28 (denying Mr. Palmer's motion to quash and ordering his clients to produce documents and sit for deposition); Ex. F (order compelling discovery from Mr. Palmer in *Sullivan v. Kelly Services, Inc.*, No. 08-cv-3893 (N.D. Cal. Aug. 10, 2011)).[3]

There many examples where Mr. Palmer steadfastly refuses to comply with court orders and instead appeals them, demonstrating the need to create a solid appellate record. The discovery plaintiff seeks will allow us to create that record.

For example, in *In re TFT-LCD Antitrust Litig.*, No. 07-1827 (N.D. Cal.), Judge Susan Ilston ordered Mr. Palmer and his clients (who were his wife, his aunt and another serial objector) to sit for deposition. *See* Ex. S. They were then sanctioned after ignoring the order. *In re TFT-LCD*, 2013 U.S. Dist. LEXIS 23109, at *59-60. Mr. Palmer then requested 90 days to pay the sanction and a stay of the order to permit an appeal. The court denied the request. *In re TFT-LCD*, 2013 U.S. Dist. LEXIS 34845, at *44-45 (N.D. Cal. Mar. 12, 2013); *see also* Ex. T (order to show cause hearing transcript from *In re TFT-LCD*) at p.4.

During the hearing on the order to show cause, Judge Ilston questioned Mr. Palmer about why he ignored the discovery orders:

---

[3] Mr. Palmer nonetheless failed to comply with the order, and the court held Mr. Palmer in contempt. Mr. Palmer then refused to comply with the court's contempt order, claiming "[t]he Northern District simply has no power to enforce a subpoena outside of the Northern District." *See In re SRAM*, D.E. No. 1399.

> **The Court**: Is it not the first time that you've defied a court order?
>
> **Mr. Palmer**: Your Honor, I didn't defy the court order.
>
> **The Court**: You were ordered. You were ordered to produce these folks for deposition.
>
> **Mr. Palmer**: Well, Your Honor --
>
> **The Court**: And you didn't do it.
>
> **Mr. Palmer**: I – I think that ordering somebody to produce someone else is – I mean, how can you order me to produce my wife at deposition? That's –
>
> **The Court**: Because you were representing her. She was your client. You undertook to file a claim on her behalf. So I hope you explain to her that the problem is you chose her to be the objector in this case, and not that the Court told you that she needed to give her deposition.

*Id.* at p.12. To date, Mr. Palmer has not paid the sanctions imposed by Judge Ilston. *See In re TFT-LCD*, D.E. No. 7717 (on April 8, 2013, plaintiffs filed a motion for an order to show cause why Mr. Palmer and the objectors should not be held in contempt and further sanctioned).

In *Embry v. ACER America Corp.*, No. 09-cv-1808 (N.D. Cal.), Judge James Ware ordered Mr. Palmer's client (who was himself a serial objector attorney) to dismiss his appeal or post a bond in the amount of $70,650 because "his objections to the settlement are lacking in merit." *See* Ex. U. Mr. Palmer ignored the order and refused to pay the bond. The court found Mr. Palmer and his client in contempt and struck the objection. Rather than dismiss his appeal, Mr. Palmer included the contempt order in his appeal. Plaintiff moved again for an order requiring, among other things, that Mr. Palmer and his client to (1) sit for deposition, (2) pay attorneys' fees and costs, (3) and disclose the ruling made by Judge Ware in future cases. Mr. Palmer dismissed his appeal shortly after

plaintiff's motion for further sanctions was filed. *See Embry*, D.E. Nos. 277, 280.

Before Mr. Palmer and his clients appeal an order approving the proposed settlement and forcing class members to wait to receive the settlement consideration, the objectors should be deposed and Mr. Palmer should be ordered to produce the requested documents.

## V.   CONCLUSION

Plaintiff respectfully requests that this Court: (a) deny the Motion to Quash; (b) command Mr. Palmer to produce the requested documents at the offices of Blood Hurst & O'Reardon, LLP, 701 B Street, Suite 1700, San Diego, CA 9210 on or before April 17, 2013, at 12:00 p.m.; (c) command Blanchard to appear for deposition at US Legal Support, 802 N. Carancahua Street, Suite 2280, Corpus Christi, TX 78401 on April 18, 2013, at 12:00 p.m.; and (d) command McBean to appear for deposition at Hampton Inn & Suites, 11951 State Highway 267, Truckee, CA 96161 on April 19, 2013, at 12:00 p.m.

Dated:  April 16, 2013

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD
LESLIE E. HURST
THOMAS J. O'REARDON II

By:     *s/ Timothy G. Blood*
        TIMOTHY G. BLOOD

701 B Street, Suite 1700
San Diego, CA  92101
Telephone: (619) 338-1100
Facsimile: (619) 338-1101
tblood@bholaw.com
lhurst@bholaw.com
toreardon@bholaw.com

BONNETT, FAIRBOURN, FRIEDMAN
  & BALINT, P.C.
ANDREW S. FRIEDMAN (AZ 005425)
ELAINE A. RYAN (AZ 012870)
PATRICIA  N.  SYVERSON
  (CA 203111: AZ 020191)

2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 274-1100
Facsimile: (602) 798-5860
afriedman@bffb.com
eryan@bffb.com
psyverson@bffb.com

*Co-Lead Class Counsel*

BLOOD HURST & O'REARDON, LLP

00058667

14   Case No. 3:09-MD-02087-BTM(KSC)
Case No. 3:09-CV-01088-BTM(KSC)
PLAINTIFF'S OPPOSITION TO MOTION TO QUASH SUBPOENAS

# CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

Executed on April 16, 2013.

*s/ Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com