# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HYDROXYCUT MARKETING AND SALES PRACTICES LITIGATION | CASE NO. 09md2087 BTM (KSC) |
| ANDREW DREMAK, on Behalf of Himself, All Others Similarly Situated and the General Public,<br><br>Plaintiff,<br><br>v.<br><br>IOVATE HEALTH SCIENCES GROUP, INC., et al.,<br><br>Defendants. | CASE NO. 09cv1088 BTM(KSC)<br><br>**ORDER DENYING APPLICATION FOR ORDER TO SHOW CAUSE RE: SANCTIONS AND OTHER RELIEF** |

Plaintiff Andrew Dremak has filed an application for an order show cause re: sanctions and other relief against Christopher Bandas and Darrell Palmer. For the reasons discussed below, Plaintiff's application is **DENIED**.

## I. BACKGROUND

On March 22, 2013, Darrell Palmer filed Objections on behalf of Objectors Tim Blanchard and Sasha McBean. According to Mr. Palmer, Mr. Blanchard was referred to him by attorney Christopher Bandas, who is located in Corpus Christi, Texas. On May 29, 2013, Mr. Palmer filed a motion to withdraw as attorney for Mr. Blanchard and Ms. McBean, which the Court granted on May 30, 2013. Kendrick Jan stepped in as counsel of record for Sasha McBean. No new attorney entered an appearance for Mr. Blanchard.

After holding an evidentiary hearing, the Court struck the objections of Ms. McBean and Mr. Blanchard on the ground that they lacked standing. (09md2087 - Doc. No. 1711.) During the evidentiary hearing, David Reid, whose firm was hired by the Iovate Defendants to approach the Objectors' attorneys, testified that when he called Mr. Palmer to find out what his clients' objections to the class action settlement were, Mr. Palmer told Mr. Reid that he would have to speak to Mr. Bandas because it was Mr. Bandas's "show" and Mr. Bandas was the person best equipped to answer Mr. Reid's questions. (Tr. of Hr'g on June 20, 2013 (Doc. No. 1672), 37:10-24; 38:14-20.) When Mr. Reid contacted Mr. Bandas, Mr. Bandas assured Mr. Reid that he spoke for himself and Mr. Palmer and would make sure that Mr. Palmer would get his cut of any settlement payment. (Id. at 21:9-14.) In response to Mr. Reid's inquires regarding what the Objectors' issues with the proposed settlement were, Mr. Bandas told Mr. Reid that he didn't care about changing one word of the settlement. (Id. at 21:21-25.) Mr. Bandas explained that he could tie up the settlement for two to three years during the appeals process and that he was willing to wager that the settling parties would gladly pay him close to $400,000 to make the objections go away. (Id. at 21:21-25; 22:1-13.)

In August 2013, in response to the Court's concerns regarding the proposed settlement's *cy pres* provisions, the parties amended their Stipulation

of Settlement and expanded the class to include personal injury plaintiffs. A Supplemental Class Notice was sent out and the Final Approval Hearing was scheduled for October 22, 2013. Before the Final Approval Hearing, Mr. Blanchard and Ms. McBean filed new objections. Fatima Dorego also filed an objection. Mr. Palmer subsequently filed a Notice of Appearance on behalf of Ms. Dorego.

Class Counsel filed a response to the new Objections. (Doc. No. 1694.) In their response, Class Counsel alleged that it appeared that the signatures of Mr. Blanchard and Ms. Dorego on various documents had been forged. Mr. Oleksow, a certified Forensic Document Examiner, opined that Blanchard's signature on the March 22, 2013 declaration filed in support of his first objection was written by a different writer than any of the three Blanchard signatures submitted in connection with his second objection. (Oleksow Decl. (Doc. No. 1694-3) ¶ 14.) Oleksow also observed that the signature on the declaration filed in support of Blanchard's second objection "is written slowly and deliberately with hesitation, pen lifts and termor in the line flow." (Oleksow Decl. ¶ 16.)

Mr. Oleksow also compared the signature of Ms. Dorego on her claim form in this case and her purported signature on a declaration filed in a different litigation in the District of New Jersey (Brody v. Merck). He observed: "Different styles are noted and no significant similarities are noted." (Oleksow Decl. ¶ 20.) However, due to an insufficient number of signatures for comparison purposes, Mr. Oleksow could not reach any definitive conclusion regarding identity. (Id.)

Responding to Class Counsel's allegations of forgery, Mr. Blanchard filed a notarized affidavit (Doc. No. 1705-1) in which he explained that he authorized Mr. Bandas and/or an employee of his firm to sign his name to certain documents, including his declaration in support of the first objection. Mr. Blanchard stated that he personally signed the other documents submitted in this case.

Ms. Dorego also filed a notarized affidavit (Doc. No. 1702). She declared that she personally signed the claim form in this case. As for the signature on the declaration filed in Brody v. Merck, Ms. Dorego explained that she gave permission for someone else to sign her name because she was traveling that day.

At the final approval hearing, the Court ordered Ms. Dorego to show cause why her objection should not be stricken for lack of standing. (Tr. of Hr'g on October 22, 2013 (Doc. No. 1714), 23:25-24:1.) Mr. Palmer informed the Court that Ms. Dorego would not appear at any evidentiary hearing regarding standing. (Id. at 25:14-18.) Consequently, the Court struck Ms. Dorego's objection. (Id. at 26:2-12.) The Court also struck the objections of Mr. Blanchard and Ms. McBean for lack of standing. (Doc. No. 1711.) At the end of the final approval hearing, the Court set a schedule for briefing regarding whether the Court should issue an order to show cause for Rule 11 sanctions or other types of sanctions against Mr. Bandas, Mr. Palmer, and/or anyone else.

## II. DISCUSSION

Plaintiff Andrew Dremak requests that the Court issue an Order to Show Cause why Mr. Bandas and Mr. Palmer should not (1) be referred to the United States Attorney's Office; (2) be referred to the regulatory authorities of their respective state bar organizations; and (3) be sanctioned for violating Fed. R. Civ. P. 11. As discussed below, the Court denies Plaintiffs' request because it is doubtful whether the Court has personal jurisdiction over Mr. Bandas and there is insufficient evidence of wrongdoing by Mr. Palmer.

1. Mr. Bandas

Plaintiff seeks an Order to Show Cause against Mr. Bandas on the grounds that (1) Mr. Bandas and/or his employees affixed the "signature" of Mr. Blanchard

on a document or documents filed with the Court; (2) Mr. Bandas ghost-wrote the second objection filed by Mr. Blanchard, pro per; and (3) Mr. Bandas caused objections to be filed for the improper purpose of pressuring the settling parties to pay a significant amount of money to make the objections go away.

Although the allegations against Mr. Bandas are serious and not taken lightly by the Court, the Court questions whether it has personal jurisdiction over Mr. Bandas, who has never appeared in this case. In McGuire v. Sigma Coatings, Inc., 48 F.3d 902 (5th Cir. 1995), the Fifth Circuit held that the district court had not acquired personal jurisdiction against a litigant's in-house counsel at the time the district court imposed sanctions against him. "He was not a party to the case (or the alter ego of a party), nor an attorney in it, nor a member of the district court's bar, and thus was not otherwise subject to the district court's jurisdiction." Id. at 907. The Fifth Circuit explained that the in-house counsel had not been served with any document that would satisfy the requirements of formal process. Id. The Fifth Circuit made it clear, however, that it was not deciding whether even if formal process had been effected, the district court would have acquired personal jurisdiction over the attorney so that it could sanction him. Id. at 906, 908 n. 14.

District courts have held that they lack jurisdiction to sanction attorneys who have not appeared before them. For example, in Mercury Service, Inc. v. Allied Bank of Texas, 117 F.R.D. 147 (C.D. Cal. 1987), the court found that a declaration by a Senior Vice President of the Corporate Services Department of Allied Bank, which was filed in support of a motion to dismiss by Allied Bank of Texas, contained misleading and false representations. Although the court sanctioned Allied Bank of Texas and Allied Bank's attorney of record, the court did not sanction the in-house counsel who advised the Senior Vice President to sign the Declaration. "The Court would sanction him if it had jurisdiction over him. He has not appeared in this action to represent the Bank, nor is he a party, and

thus the Court lacks jurisdiction over him." Id. at 159. See also Shade v. Bank of America, N.A., USA, 2009 WL 2252551, at * 2 (E.D. Cal. July 28, 2009) ("Plaintiff is advised that neither Bank of America nor attorneys Reed Smith have appeared in this action; thus, this court has no jurisdiction to make such a sanctions order. Plaintiff's motion will be denied."); Blanchard v. Edgemark Financial Corp., 175 F.R.D. 293, 303 n. 12 (N.D. Ill. Aug. 25, 1997) (noting that an attorney who represented the class representative in a separate litigation had not filed an appearance in the class action and was "thus outside the purview of this Court's jurisdiction" for purposes of a motion for sanctions).

Because it is doubtful whether the Court has jurisdiction to sanction Mr. Bandas, the Court declines to issue an Order to Show Cause why Mr. Bandas should not be sanctioned under Rule 11 or be referred to the U.S. Attorney's Office or the State Bar of Texas. However, the Court cautions Mr. Bandas that if he or employees under his direction continue to affix the signatures of others on declarations filed in this District, the Court may very well reconsider its decision not to refer the matter to the State Bar of Texas's Commission for Lawyer Discipline.[1]

2. Mr. Palmer

Plaintiff moves for an Order to Show Cause against Mr. Palmer on substantially the same grounds as against Mr. Bandas. Although the Court has

---

[1] Under 28 U.S.C. § 1746, when any matter is required to be established by a sworn declaration, such matter may, with like force and effect, be supported or proved by the unsworn declaration "in writing of such person which is subscribed by him, as true under penalty of perjury . . . ." 18 U.S.C. § 1621(2) provides that a person in a § 1746 declaration who "willfully subscribes as true any material matter which he does not believe to be true" is guilty of perjury. "[A] person would quite obviously violate this provision if he knowingly signed someone else's name to a § 1746 declaration." Summers v. United States Dept. of Justice, 999 F.2d 570, 573 (D.C. Cir. 1993). See also Feezor v. Excel Stockton, LLC, 2013 WL 5486831, at *3-4 (E.D. Cal. Sept. 30, 2013) (holding that plaintiff's declaration signed by plaintiff's attorney had no evidentiary force, and noting that the plaintiff's attorney avoided a misleading representation to the court by including a footnote to the signature that explained that the plaintiff was in the hospital and that counsel affixed the plaintiff's signature with the plaintiff's authorization).

personal jurisdiction over Mr. Palmer, there is insufficient evidence that Mr. Palmer engaged in wrongdoing warranting an Order to Show Cause.

Plaintiff alleges that the Dorego Objection contains a forgery. But there is insufficient evidence that Ms. Dorego's signature on the claim form in this case is not actually hers.[2] Ms. Dorego claims that she did in fact sign the claim form. Ms. Dorego admits that someone else (unidentified) signed her name, with her authorization, on the declaration filed in the Brody v. Merck case. However, that case was not in this district, and her attorney in that case was not Mr. Palmer. Although Mr. Palmer filed a declaration of Mr. Blanchard that admittedly was signed by Mr. Bandas or someone at his firm, there is no evidence that Mr. Palmer knew that the signature was not genuine.

Plaintiff alleges that Mr. Bandas and Mr. Palmer have a history of ghost-writing objections for pro se objectors and making appearances later in the litigation after orders approving settlement are appealed. With respect to this case, Plaintiff accuses Mr. Bandas of ghost-writing Mr. Blanchard's latest objection. However, Plaintiff does not present any evidence of Mr. Palmer ghost-writing pro se pleadings.[3]

Finally, Plaintiff argues that Mr. Palmer should be sanctioned under Rule 11 for filing objections for the improper purpose of extorting money. If Mr. Palmer and Mr. Bandas planned from the beginning to file objections for the sole purpose of pressuring the settling parties to pay them a substantial sum of money to avoid having the settlement process bogged down for years, Plaintiff would have a

---

[2] Although there is insufficient evidence to issue an Order to Show Cause against Mr. Palmer, the Court was justified in ordering Ms. Dorego to show cause why her objection should not be dismissed for lack of standing given the questions raised regarding the authenticity of her signature on the claim form, Blanchard's admission that Bandas and/or his employees affixed his signature on various documents, and the circumstances surrounding the striking of Ms. McBean's objection.

[3] The Court does not voice any opinion regarding whether or when ghost-writing is improper.

strong case that the objections were filed in bad faith and that sanctions under Rule 11 or 28 U.S.C. § 1927 would be appropriate. But, on the present record, Plaintiff lacks evidence that Mr. Palmer knew what Mr. Bandas was going to say to Mr. Reid or that he endorsed the position taken by Mr. Bandas. While one could infer or speculate that Mr. Palmer and Mr. Bandas were acting in concert, the Court will not issue an Order to Show Cause absent more direct evidence of Palmer's knowing participation in such a scheme.

### III. CONCLUSION

For the reasons discussed above, Plaintiff's application for an order to show cause re: sanctions and other relief is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 3, 2014

*Barry Ted Moskowitz*
BARRY TED MOSKOWITZ, Chief Judge
United States District Court